JOHN MURINELLI *vs.* T. STUART & SON COMPANY.

Cumberland.    Opinion February 12, 1918.

*Negligence.    Assumption of risk.    General rule of law relative to the duty of principal or master to warn his servants and employees of risks connected with their work.*

1.  It is the duty of the master to instruct the inexperienced servant of risks and dangers of the employment which the servant did not know and appreciate, or which he cannot reasonably be held to have known and appreciated; but to cast this responsibility upon the master it must appear that he himself knew or ought to have known of such risks and dangers and also that he knew that the servant was inexperienced and thus excusably ignorant of the risks and dangers and that the servant in the performance of his employment would be reasonably likely to be exposed to those risks and dangers.

2.  The plaintiff was bound to use his senses, and to apply his intelligence and understanding to discern obvious risks and dangers incident to his employment, and to apprehend such risks and dangers as are likely to attend known conditions and circumstances.

3.  If there was a risk that the stick of timber in the process employed in moving it along over the top of the crossbeams would swerve to or from the plaintiff to such an extent as to throw him down, nevertheless there is no evidence that the defendant knew or ought to have known any more concerning that risk than the plaintiff himself who had been working for several hours moving similar sticks by the same process.

4.  If the plaintiffs fall was caused by the stick swerving against him, it does not appear that such swerving was not the fault of the plaintiff himself or the fault of his fellow workmen.

5.  Considering the place where the plaintiff was working at the time of the accident, the work he was then assisting in doing, the length of time he had been so employed, his age and experience, and giving him the benefit of every doubt that might be entertained as to the facts, as he claims them to be, which tend to disclose the cause of his fall from the top of the trestle on which he was standing, the court is fully persuaded that plaintiffs alleged cause of action against the defendant was not sustained by the evidence, and that the order of non-suit was rightly made.

Action on the case to recover damages on account of injuries received by plaintiff through alleged negligence of defendant company.  Plea of general issue filed.  At close of plaintiff's testimony, on motion of defendant, a nonsuit was granted; to which ruling plaintiff filed exceptions.  Exceptions overruled.

Case stated in opinion.

*Woodman & Whitehouse, and John B. Thomes, and Raymond S. Oakes,* for plaintiff.

*William H. Gulliver, and Clement F. Robinson,* for defendant.

SITTING:  CORNISH, C. J., SPEAR, KING, BIRD, HANSON, PHILBROOK, MADIGAN, JJ.

KING, J.  This is an action to recover damages for personal injuries sustained by the plaintiff while in the defendant's employ, and it comes before this court on the plaintiff's exceptions to an order of nonsuit.

The defendant was engaged in constructing the new cement bridge across Portland Harbor between Portland and South Portland. The plaintiff had been in its service for about three years as a general laborer.  At the date of the plaintiff's injuries the work on the bridge had progressed to a point requiring heavy staging, called falsework, upon which to place the molds for the cement of the bridge at the required height above the ground.  Upon a secure foundation trestles

or "bents", so called, made of heavy timbers were erected parallel to each other and to the course of the bridge; they were twenty-five to forty feet long, and as several of the bents were required to cover the necessary space lengthwise, the end of one bent was lapped by the end of another two or three feet, instead of being butted against the end of the other. The top timber of the bent had a ten inch face. Across the tops of the bents, at right angles with them and with the course of the bridge, crossbeams were laid. At the point where the injury occurred, slightly to the east of Commercial Street, the top of the crossbeams was about thirty feet above the ground. The upper part or top of the falsework on which the crew were working at the time of the injury consisted solely of the top timbers of the bents or trestles, extending lengthwise of the bridge, and the crossbeams laid thereon and at right angles thereto.

On the morning of the day of the accident the plaintiff was working, with others, on the ground preparing some of the heavy timbers for use in the construction of the falsework. These timbers were raised to the top of the falsework by a crane, and a crew of four men moved the timbers along the top of the falsework to points varying from two to three hundred feet from the crane. In so moving the timbers the men stood on, and as necessity required walked along on, the ten inch timbers which formed the top part of the bents or trestles, and in their progress they had to step over the crossbeams as they came to them, and also to step to the right, or to the left, where the bents lapped by each other. The timbers were moved along on the top of the crossbeams by the joint effort of the four men sliding each timber along to its proper place. The four men stood on the top timber of the bent with the stick of timber to be moved resting near them on the crossbeams and parallel with the bent on which they stood. They all faced the way the stick was to be moved, bent over and grasped it with their hands, one hand on top and the other underneath it, and when the word was given by the man at the rear end of the stick they pushed the stick forward as far as convenient in the direction they were facing, and then stepping forward a step or two on the bent they repeated the act.

On the day of the accident the defendant's superintendent directed the plaintiff to assist three other workmen in moving the timbers along the top of the falsework. He obeyed and had worked some hours when the accident occurred. The plaintiff was at the forward

end of the stick of timber being moved, another man was at the rear
end, and the other two were stationed between at about equal dis-
tances from the ends.   In his direct examination the plaintiff stated
that they moved the stick of timber along until he came to the end of
the trestle or bent on which he was walking and to where the next
trestle lapped by to his right; that he stepped on to that next trestle
and, to quote his words, "we got hold of it again.   .   .   .   Then when
we was a little way, the beam come my way and throwed me down."
He further stated that he had moved forward some little distance on
the trestle from which he fell, pushing the timber along, and had
stepped over one crossbeam resting on that trestle, before he fell.   In
his fall he received the injuries complained of.

The gist of the plaintiff's alleged cause of action is that the defend-
ant was negligent in not warning him of the risks of injury incident to
the work he was directed to assist in carrying on, that is, moving
timbers along the top of the falsework.   And his particular allegation
of the defendant's duty to warn him, and which it failed to perform,
is thus stated in his declaration:   "that it was the duty of the defend-
ant company to have warned and advised the plaintiff against the
peculiar danger of not being able to maintain his footing and balance
in case the beam of which he held the extreme westerly end should
suddenly swerve to one side or the other thus destroying the plaintiff's
balance and  push or sweep  him off  the  girder on which  he  was
standing, of which special danger the plaintiff was then and there
ignorant and did not appreciate, perceive or comprehend the same
but the said dangerous conditions were all well known to the defend-
ant company."

Clearly the plaintiff does not allege or contend, as we understand
him, that he needed to be warned that the place where he was directed
to work—on the top of the timber framework, was attended with a
risk of his falling therefrom not incident to similar work on the ground
or on a platform.   He frankly stated that he knew if he missed his
step while moving along on the tops of the bents he would fall and be
hurt.   Any person of reasonable intelligence is presumed to know
that.   That is a risk incident to the work, and plainly an obvious risk.
The plaintiff's claim therefore is, as he has alleged, that he should
have been warned of the risk that the sticks of timber he was directed
to assist in moving were likely to swerve and cause him to lose his
balance and fall from the top of the falsework.

The universally acknowledged rule of law involved in the question of the master's duty to warn or instruct his servant as to risks of the employment has been variously expressed in judicial decisions and by text writers, but to the same import. In *Wormell* v. *Railroad Co.*, 79 Maine, page 405, our court said, that "the law implies that where there are special risks in an employment of which the servant is not cognizant, or which are not patent in the work, it is the duty of the master to notify him of such risks; and on failure of such notice, if the servant, being in the exercise of due care himself, receives injury by exposure to such risks, he is entitled to recover from the master whenever the master knew or ought to have known of such risks."

Prof. Thompson in his work on Negligence states the rule thus: "If the master knew or ought to have known, and the servant did not know, and was not bound to know of its existence, the liability of the master—the servant having been otherwise in the exercise of due care—is fixed. And it is equally true in every case, that unless the master knew of the defect (risk) which subsequently produced the injury, or was under a duty of knowing it, he cannot be held liable." 2 Thomp. Neg., 992-3.

And in Labatt on Master and Servant, 2nd ed. Sec. 1141 (235) the author states the propositions which an employee must establish to maintain an action against his employer for non-performance of the duty to instruct or warn him of the risks of the employment, to be: (1) that the master was chargeable with knowledge, actual or constructive, of the existence of the risk; (2) that the servant himself did not appreciate the risk and that his non-appreciation thereof was excusable; and (3) that the master knew, or ought to have known, that the plaintiff was thus excusably ignorant of the risk, and was by reason of such ignorance exposed to an abnormal hazard, over and above those which he was presumed to contemplate as incidents of his employment. To the same effect, in the recent case of *Colfer* v. *Best*, 110 Maine, 465, 466, this court said: "It is the duty of the master to instruct the inexperienced servant of dangers of the employment which he did not know and appreciate or which he cannot reasonably be held to have known and appreciated. But to throw this responsibility upon the master, it must appear that the master knew or ought to have known that the servant was inexperienced and thus excusably

ignorant of the danger, and that the act of the servant which exposed him to the danger was reasonably likely to be expected by the master."

Applying these well recognized principles of law to the plaintiff's alleged cause of action, it becomes clearly apparent that to maintain his action it was incumbent upon him to establish these propositions: first, that his fall was caused by the swerving of the stick of timber against him without any contributory negligence on his part, or negligence on the part of his fellow-servants in that work; second, that he did not know and appreciate and cannot reasonably be held to have known and appreciated that in the process of sliding the stick of timber along on the crossbeams by the joint effort of the four men it might swerve against him; third, that the defendant knew, or ought to have known, of that risk that the stick of timber in the process of moving it along on the crossbeams was likely to swerve against the plaintiff and throw him from the trestle; and fourth, that the defendant knew, or ought to have known, that the plaintiff was excusably ignorant of that risk, and was therefore exposed to a hazard over and above those which he was presumed to contemplate and appreciate as incident to his employment.

From a careful study of the record we are fully convinced that the plaintiff has not established those propositions.

He says in direct examination, that "the beam come my way and throwed me down," and, in cross-examination, that "when they shoved her again that timber come my way and knocked me down right there (indicating)." He also says that they had moved three or four timbers that morning before the accident, that this stick of timber was being moved by the same process as the others were moved, and, when asked if the timbers could be moved straight along without being swerved, he replied, "Well, of course." He says he does not know what made that stick swerve. One of his fellow-workers, a Mr. Perkins, was called by him and testified that he was the second man from the plaintiff, that they had just given the stick a move along when he heard the statement "man overboard," that he did not know how the accident happened, and that so far as he could recollect the timber did not swerve. "Did you notice whether it went away from you at all? A. Not enough to notice." If the stick of timber swerved against the plaintiff, as he says it did, what caused it to do so? That is left to conjecture. It may have been

because of his fault, or that of his fellow-servants. There is no evidence that the stick was crooked, or that the crossbeams were uneven, on the other hand, the plaintiff says the timber could be moved along straight without swerving, as the others evidently had been.

But if it could be properly held that the jury would have been justified by the evidence in finding that the stick of timber swerved against the plaintiff and threw him down, without any negligence of himself or of his fellow-workers, it certainly cannot be held that the evidence was sufficient to justify a finding by the jury that the plaintiff has established the other propositions essential to the maintenance of his action.

The plaintiff was 40 years of age and had been in this country 26 years.

Briefly stated, he had worked "firing" stationary engines for contractors building railroads and bridges, had worked at what he called "rigging" and called himself a "rigger", had helped build retaining walls and the staging connected therewith, had helped put up derricks and move timber from one place to another, had worked at loading and unloading cars of lumber, and, at one time, helped build some high steel towers. Such is only a partial summary of the kinds of work in which the plaintiff had been employed for twenty-five years, but it is sufficient we think to indicate that he is a man of at least average intelligence, and of experience in taking care of himself under the circumstances usually attending laborers while engaged in ordinary building and construction work. And we think the defendant was justified in considering him qualified to assist in moving the timbers along on the top of the falsework.

There was no defect in the falsework. As a place to work it cannot be considered as containing undisclosed risks or dangers. The danger of one falling on account of losing his balance while working thereon was obvious to any reasonably intelligent person. After the plaintiff had worked thereon for some hours and had assisted in moving three or four of the sticks of timber, he must be held to have known and to have appreciated such risks of his falling, either as the result of a misstep or of the swerving of the stick of timber against him, as were incident to the process of moving the stick along as he and his fellows were doing it. Certainly he then knew, or ought to have known, as much concerning any such risks as the defendant can be presumed to have known. He was bound to use his senses, intelligence and under-

standing to discern obvious risks and dangers incident to his employment, and to apprehend such risks and dangers as are likely to attend known conditions and circumstances.

If there was a risk that the stick of timber, in the process employed in moving it along over the crossbeams from the crane to its proper place, would swerve to or from the plaintiff to such an extent as to throw him down, and that risk was not an obvious one incident to the work, nevertheless, there is no evidence that the defendant knew of the existence of that risk; and we can perceive no reasonable ground for a finding that the defendant ought to have known of any such risk, and also that it ought to have known that the plaintiff was excusably ignorant of such a risk.

Considering the place where the plaintiff was working at the time of the accident, the work he was then assisting in doing, his age and experience, and giving him the benefit of every doubt that might be entertained as to the facts, as he claims them to be, which tend to disclose the cause of his fall from the top of the trestle or bent on which he was standing, the court is fully persuaded that the plaintiff's alleged cause of action against the defendant was not sustained, and that the order of nonsuit was rightly made.

*Exceptions overruled.*

Mr. Justice Hanson does not concur.